UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCQUIN VAN GUILDER ) | |
| ) | Case No. 08 C 1875 |
| ) | |
| Plaintiff, ) | Judge Castillo |
| ) | |
| v. ) | Magistrate Judge Keys |
| ) | |
| ) | Jury Demand |
| WILL COUNTY STATE'S ATTORNEY ) | |
| JAMES W. GLASGOW, ) | |
| individually, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff, ROCQUIN VAN GUILDER, by and through his attorneys, GREGORY E. KULIS & ASSOCIATES, and in support of his response to Defendant's Motion to Dismiss Plaintiff's Complaint, states as follows:

INTRODUCTION

This action is currently before the Court by virtue of diversity jurisdiction and consists of one state law claim of malicious prosecution against Defendant James Glasgow. As detailed in Plaintiff's complaint, this action arises out of the Defendant's alleged actions in response to an incident that occurred on December 1, 2006. At that time, Plaintiff was working as a project manager for the Peatone Airport in Will County. During the course of the day, a machine operator named Bob Gatto, employed by a third party named Mr. Pawlik, inadvertently drove across private property with some equipment. Despite the fact that Plaintiff was not Mr. Gatto's employer, had never directed Mr. Gatto to enter onto the property, and was not in the immediate vicinity of the

property when this occurred, Defendant eventually brought charges of criminal trespass and criminal damage to property against the Plaintiff.  Defendant Glasgow had originally publicly stated that there was insufficient evidence to support a trespassing charge, and it was only after receiving much negative press and meeting with members of an organization named "Shut This Airport Nightmare Down" (hereinafter "STAND") that he decided to move forward with a criminal prosecution.  The charges against Plaintiff were brought despite the fact that the property sustained no damage and there were no signs on the private property warning against trespass.  Plaintiff was eventually found not guilty of all of the charges against him, but Defendant's actions resulted in the termination of his employment, a substantial financial loss, and most importantly, irreparable damage to his reputation.

Defendant has filed a motion to dismiss Plaintiff's complaint (hereinafter "Motion"), alleging that Plaintiff's claim is legally insufficient because the Defendant is protected by immunity for his alleged acts.  For the reasons set forth below, Defendant's arguments lack merit, and the Plaintiff respectfully requests that the Court deny Defendant's motion.

STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.  EQ Financial, Inc. v. Personal Financial Co., 2006 WL 722654 (N.D.Ill. March 23, 2006) *citing* General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir.1997).  Dismissal is appropriate only if it appears beyond a doubt that the plaintiffs can prove no set of facts in support of its claim that would entitle them to relief.

Id. *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 695 (7th Cir.1999). In ruling on the motion, the court must accept as true all well pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Id. *citing* Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir.1999).

ARGUMENT

I. PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO STATE A CLAIM FOR THE MALICIOUS PROSECUTION COUNT IN HIS COMPLAINT.

Defendant claims that Plaintiff has failed to allege facts sufficient to support the malicious prosecution claim in his Complaint. Under Illinois law, plaintiff must demonstrate the following elements of a claim for malicious prosecution: (1) that defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages. Aguirre v. City of Chicago, 320 Ill. Dec. 512, (Ill.App. 1 Dist. 2008). Defendant argues that he is entitled to absolute prosecutorial immunity for his initiation of criminal charges against Plaintiff and public official immunity and sovereign immunity with respect to his visit to the scene and meeting with STAND members. Plaintiff's complaint has adequately stated a cause of action and, therefore, the Defendant's motion must be denied.

  A. Defendant Glasgow's actions as alleged were performed outside of his prosecutorial role and in an investigatory capacity, thus disqualifying him from absolute prosecutorial immunity.

As stated by Defendant in his motion, state law provides that prosecutors have absolutely immunity only in regards to those actions intimately associated with the judicial phase of the criminal process. White v. City of Chicago, 861 N.E.2d 1083

(Ill.App.Ct.1ˢᵗ Dist. 2006).   However, when prosecutors perform administrative or investigatory functions, such as those normally performed by a detective or police officers, they are not entitled to absolute immunity, but rather receive only qualified immunity.  See Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Hampton v. City of Chicago, 349 F.Supp.2d 1075 (N.D. Ill. 2004); Patterson v. Burge, 328 F. Supp.2d 878 (N.D. Ill. 2004).  As stated by the court in Forrester v. White, 484 U.S. 219, 229 (1988), it is "the nature of the function performed, not the identity of the actor who performed it" that is determinative of whether (and what kind of) immunity applies.  Plaintiff concedes that in filing the complaint against him and initiating criminal charges, Defendant was acting in his core prosecutorial role and would thus be entitled to absolute prosecutorial immunity.  See id.  However, Plaintiff contends that in meeting with members of the STAND organization and visiting the "scene of the crime", so to speak, Defendant acted in a purely investigatory capacity.   See id.

     As previously noted, the incident for which Plaintiff was eventually prosecuted occurred on December 1, 2006.  It was not until March 2007. after publicly stating that there was insufficient evidence to pursue criminal charges due to a lack of "no trespassing" signs and significant damage to the property and being met with a backlash of negative press and pressure from his constituents, that Defendant decided to meet with the property owner, Mr. Baugh, at his home, and with representatives of the Will County Board, Will Township, and STAND members.  It is important to note that at the time of this meeting, there existed no probable cause to arrest and charge Plaintiff (as acknowledged publicly by Mr. Glasgow).  As stated by the court in Imbler v. Pachtman, 424 U.S. 409, 431 (1976), "the line between quasi-judicial and investigative activities is

concededly nebulous, and courts look to several factors." In <u>Michaels v. New Jersey</u>, 50 F. Supp.2d 353 (D.N.J. 1999), the court found that "one of the ways by which to determine on which side of the line the actions in question fall is by determining when probable cause existed for, as the Supreme Court has held, prior to the establishment of probable cause to arrest, the prosecutor cannot be deemed an advocate for the state." <u>See</u> <u>Buckley</u>, 509 U.S. at 274 ("A prosecutor neither is, nor should he consider himself to be, an advocate before he has probable cause to have anyone arrested").

As in <u>Michaels</u>, at issue are the Defendant's activities conducted prior to his decision to press charges against Plaintiff, namely, his meeting with Mr. Baugh and with individuals from Will Township and STAND. It is hard to imagine precisely what information Mr. Glasgow learned at this meeting that was not discovered in the initial investigation (aside from, perhaps, that the opposition to his position on this issue was stronger than previously thought) that led him to conclude that criminal charges were warranted. Plaintiff contends that no probable cause for arrest existed at the time of this meeting with these various individuals, thus making it impossible for Defendant to be acting as an advocate of the State since prior to a determination of probable cause, a prosecutor cannot be considered as such. <u>Michaels v. New Jersey</u>, 50 F. Supp.2d 353 (D.N.J. 1999). His meeting with these individuals therefore was entirely investigatory in nature, as "interviews conducted to establish whether or not probable cause exists are investigative, rather than quasi-judicial". <u>Michaels</u>, 50 F. Supp.2d at 360. <u>See</u> <u>also</u> <u>Buckley</u>, 509 U.S. at 273 ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand,

and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.").

At the time that Defendant Glasgow had his meeting with individuals from Will County, there was no probable cause to arrest Plaintiff because as Defendant had publicly acknowledged, there were no signs stating that entry upon the land at issue was forbidden and the property had not sustained any damage. Furthermore, the facts both before and after this meeting showed that Plaintiff was not in the immediate vicinity of the private property when Mr. Gatto, the machine operator, entered onto the land, Plaintiff was never the employer of Mr. Gatto, Plaintiff never directed Mr. Gatto to enter upon the land, and Plaintiff never entered upon the land without permission. If probable cause had existed, it is unlikely that police would have waited until March 19, 2008, more than three months after the incident to "arrest" Plaintiff. Even if one were to assume for the sake of argument that Defendant's meeting with these individuals resulted in him becoming aware that such signs were displayed and that the property as seen that day had sustained damage, Defendant Glasgow became aware of this not as a result of investigative findings by police officials, those charged with the duty of investigating such matters, but rather as a result of his own *personal* investigation. It is clear that Defendant's actions and activities predated any finding or existence of probable cause, nor were Defendant's interviews with these so-called "witnesses" in preparation for any court proceeding (as a grand jury investigation was never an issue in this matter), and were investigatory in nature. Thus, Defendant is only entitled to qualified immunity, and his actions of going forward without probable cause cannot be deemed reasonable. See Buckley, 509 U.S. 259.

No doubt Defendant will argue that Defendant's March 2007 meeting with various individuals where after he decided to pursue criminal charges against Plaintiff was intimately associated with the judicial phase of criminal process.  However, as the Buckley court made clear, a prosecutor may not attempt to retroactively make activities that were investigative in nature quasi-judicial: "A prosecutor may not shield his investigative work with the aegis of absolutely immunity merely because, after a suspect is eventually arrested…and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." Buckley, 509 U.S. at 276.  Regardless of how Defendant attempts to characterize the nature of his actions, his meeting with Mr. Baugh and members of the organization "STAND" at the "scene of the crime" can be nothing but investigatory.

    B.    <u>Public official immunity and sovereign immunity do not apply to Defendant's actions</u>.

Perhaps fearing in part that it would be determined that Defendant's March 2007 meeting would be deemed investigatory in nature to which only qualified immunity would apply, Defendant argues that he has public official immunity and sovereign immunity with respect to his visit to the scene and his meeting with "witnesses" (Motion, p.6).  As an aside, to term these individuals "witnesses" is to use the term generously.  It is Plaintiff's understanding that aside from Mr. Baugh, the homeowner whose property was entered upon, the other individuals Mr. Glasgow met with were individuals who were not present at the time of the incident and whose only importance could be said to be their political power.

As stated by Defendant in his motion, Illinois law provides state officials with immunity from personal liability for their performance of discretionary duties. People v. Patrick J. Gorman Consultants, Inc., 111 Ill.App.3d 729, 731 (1st Dist. 1982). The doctrine of public official immunity exists so that a public decision-maker is not subject to personal liability for a decision made based upon his perception of the public needs. However, Plaintiff's allegations in his complaint clearly indicate that the actions undertaken by Defendant are not alleged to have been out of Defendant's perception of the public needs, but rather for improper motives and political gain. Defendant argues in his motion that motive is irrelevant to the question of prosecutorial immunity; however, motive does factor into the question of public official immunity. As stated by the court in Aboufariss v. City of De Kalb, 305 Ill.App.3d 1054, "to be protected, a public official's actions must fall within the scope of the official's authority and should not be the result of 'malicious motives'" Aboufariss v. City of De Kalb, 305 Ill.App.3d 1054 *citing* Hanzel Construction, Inc. v. Wehde & Southwick, Inc., 130 Ill.App.3d 196, 200 (1985). What Defendant fails to consider is that "public official immunity is conditioned upon the good faith exercise of discretion. Thus, the doctrine applies only in situations where there are no allegations of bad faith." Boloun v. Williams, 2002 WL 31426647, * 14 (N.D. Ill.) *citing* Rossi v. Bower, 2002 WL 1160151, *9 (N.D. Ill.); Bell v. Irwin, 2001 WL 1803645, *5-6 (S.D. Ill.).

Defendant argues that Plaintiff has not alleged that the Defendant acted with malice (Motion, p. 7). Perhaps this is because Plaintiff never directly states something to the effect of "Defendant acted willfully and with malice." However, it is well-settled that malice requires more than a simple conclusory statement. To plead malice, there must be

specific facts supporting the allegations, which, if proved, would show malicious conduct. <u>Management Ass'n of Illinois, Inc. v. Board of Regents</u>, 248 Ill.App.3d 599, 617 (1993). Plaintiff has done just that. Plaintiff's complaint alleges "Defendant Glasgow initiated the criminal charges for political motives and for public relations purposes" and that "Defendant proceeded with the criminal charges against the Plaintiff knowing that he had no probable cause and that they were false", and he supports these allegations with specific facts which include there being no damage to the property, no signs warning against trespass, Plaintiff not being in the vicinity of the property at the time of the alleged trespass, Plaintiff never setting foot on the private property in question without permission, Plaintiff having no direct relationship with the machine operator who did enter upon the land, Plaintiff issuing no directive to the machine operator to enter upon the land, and there being no criminal intent on part of the machine operator to enter onto private property. Plaintiff's allegations necessarily imply that Defendant, in knowingly and intentionally proceeding with criminal charges absent probable cause, acted in bad faith and with malice. Should the Court disagree, Plaintiff would seek leave of the Court to amend his complaint to cure any defects.

Thus, Defendant's arguments regarding whether his actions were unique to his office and discretionary in nature are irrelevant as public official immunity will not apply to acts undertaken in bad faith, which is precisely what is alleged here. See <u>Boloun</u>, 2002 WL 31426647 at * 14.

Defendant next argues that sovereign immunity also applies to his actions and that jurisdiction is improper. Defendant asserts that the claim brought by Plaintiff is only nominally against him because there is no allegation that he acted maliciously, breached

any duty owed independent of his status as state's attorney, or was acting outside the scope of his normal and official functions, thus entitling him to sovereign immunity and necessitating that Plaintiff's claim be brought in the Illinois Court of Claims. As already discussed in detail, Plaintiff's complaint alleges facts that, if proved, would constitute malicious action. See <u>Management Ass'n</u>, 248 Ill.App.3d at 617. Furthermore, Defendant clearly misreads Plaintiff's complaint, as Plaintiff's complaint directly alleges that Defendant's meeting with various "witnesses" and individuals on March 19, 2008 was outside of his normal and official functions as state's attorney. As previously discussed, Defendant's meeting and site inspection constitutes an investigatory function as probable cause to arrest Plaintiff did not exist at this time (if ever). As such, Defendant could not be acting as an advocate of the State or within the scope of his duties, stripping Defendant of any protection arising from sovereign immunity. See <u>Buckley</u>, 509 U.S. at 274; <u>Michaels</u>, 50 F. Supp.2d at 360.

     Moreover, as with public official immunity, the question of motive is again directly relevant to the inquiry into sovereign immunity. As previously stated, Plaintiff's facts as alleged constitute a pleading of malice. The law is clear that actions undertaken in bad faith and with malice are outside the scope of a State employee's authority and claims against the State employee in his individual capacity relating to acts committed with malice are not subject to sovereign immunity. Therefore, Defendant's argument that this claim must be brought in the Court of Claims fails. As stated by the court in <u>Welch v. Illinois Supreme Court</u>, 322 Ill.App.3d 345, "malice, if well pleaded, is outside the scope of a State employee's authority and must be brought in the circuit court and not the

Court of Claims. <u>Welch v. Illinois Supreme Court</u>, 322 Ill.App.3d 345 *citing* <u>Management Ass'n</u>, 248 Ill.App.3d 599, 616 (1993).

<u>CONCLUSION</u>

Defendant's motion to dismiss is preliminary and Plaintiff should be afforded the opportunity to develop his action through the discovery process. Many of Defendant's arguments regarding immunity turn on the manner in which it can be said Defendant's actions occurred. The court in <u>Boloun</u>, addressing the question of public officials' immunity, determined that it could not decide at the motion to dismiss stage whether the defendant's actions were protected due to factual disputes as to whether the defendants' actions towards the plaintiff were in good faith. <u>Boloun</u>, 2002 WL 31426647, * 14. Similarly, without having been afforded the opportunity to engage in the discovery process, all that may be considered here is Plaintiff's complaint. Though Plaintiff's complaint alleges bad faith and malice on the part of the Defendant, the fact that the parties and the Court are still in the preliminary stages of this action necessarily means that there remains much more to be learned about the nature and extent of Defendant's actions. Thus, though Plaintiff's position remains that Defendant is entitled only to qualified immunity at best and is not to be afforded the protections of absolute prosecutorial, sovereign, or public official immunity, questions of immunity remain preliminary and difficult to answer definitively at this time.

Respectfully submitted,

<u>/s/ Ronak Patel</u>

GREGORY E. KULIS AND ASSOCIATES
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
(312) 580-1830