IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCQUIN VAN GUILDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILL COUNTY STATE'S ATTORNEY ) <br> JAMES W. GLASGOW, individually, ) <br> ) <br> Defendant. ) | No. 08 C 1875 <br><br> Judge Ruben Castillo |

**DEFENDANT'S REPLY IN SUPPORT OF HIS**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant WILL COUNTY STATE'S ATTORNEY JAMES GLASGOW, by his undersigned attorneys, submits this reply in support of his motion to dismiss Plaintiff's Complaint.

A. **Plaintiff concedes that State's Attorney Glasgow has absolute immunity for the alleged initiation and prosecution of criminal charges.**

In his response, "Plaintiff concedes that in filing the complaint against [Plaintiff] and initiating criminal charges, Defendant was acting in his core prosecutorial role and would thus be entitled to absolute prosecutorial immunity." (Resp., p. 4). Thus, there is no dispute that those alleged acts are insufficient to support to a malicious prosecution claim against State's Attorney Glasgow.

B. **The alleged investigatory acts do not serve to negate the absolute immunity for the alleged prosecutorial acts.**

Despite this concession, it appears that Plaintiff is arguing that the absolute immunity for the alleged prosecutorial acts is abrogated because State's Attorney Glasgow also allegedly engaged in investigatory acts. (*See* Resp., p. 6). Immunity is determined separately for each

discrete act so that when a defendant has performed both prosecutorial and investigatory acts, the investigatory acts do not serve to destroy the absolute immunity covering prosecutorial acts. *See White v. City of Chicago*, 369 Ill.App.3d 765, 770, 861 N.E.2d 1083, 1088-1089 (1st Dist. 2006), *citing Burns v. Reed*, 500 U.S. 478, 496, 111 S.Ct. 1934, 1944-1945 (1991) (Court holding that absolute immunity applied to the state prosecutor's prosecutorial acts and qualified immunity applied to his investigatory acts). In *Michaels v. New Jersey*, upon which Plaintiff relies heavily, the court analyzed each act of the defendant separately for the purpose of determining the level of immunity applicable to each alleged act. *Michaels v. New Jersey*, 50 F.Supp.2d 353, 361 (D.N.J. 1999). Thus, to the extent Plaintiff is arguing that State's Attorney Glasgow can lose absolute immunity for his alleged prosecutorial acts because it is alleged that he also performed investigatory acts, Plaintiff's argument is contrary to the Supreme Court's functional approach and therefore must fail.

C. **The malice alleged with respect to the prosecutorial acts does not apply retroactively to the alleged investigatory acts so as to defeat State's Attorney Glasgow's public official immunity and sovereign immunity.**

In his response, Plaintiff argues that public official immunity and sovereign immunity are unavailable to State's Attorney Glasgow in this case because Plaintiff has alleged State's Attorney Glasgow acted with malice. (Resp., pp. 8-9). Plaintiff's response confirms, however, that the only allegation of malice in the Complaint is that State's Attorney Glasgow approved criminal charges while knowing there was a lack of probable cause. (*See* Compl., ¶¶27, 30). Plaintiff fails to point to any allegation in the Complaint which suggests that State's Attorney Glasgow was acting with malice when he visited the "crime" scene and met with the property owner and other constituents. Nor does Plaintiff offer any response to State's Attorney Glasgow argument (*see* Memo. of Law, pp. 7-8) that it is impossible to allege that it is malicious for an

2

elected official to meet with his constituents. As a result, Plaintiff's allegations of malice relate only to the alleged prosecutorial acts for which State's Attorney Glasgow has absolutely immunity.

Plaintiff cannot bootstrap the malice alleged with respect to the act of initiating criminal charges to the earlier acts of visiting a scene and meeting with certain individuals. Indeed, it defies logic to suggest that the act of meeting with individuals (the undisputed purpose of which was for State's Attorney Glasgow to hear why the individuals thought Plaintiff had committed a crime (*see* Compl., ¶26)) was done with malice simply because the later act of initiating charges was done with malice. This is especially true when there is no allegation that that State's Attorney Glasgow took any witness statements or collected any evidence at the meeting (or any other time).[1] Because there is no allegation that State's Attorney Glasgow was acting with malice at the time when he visited the scene and met with certain constituents, both public official immunity and sovereign immunity are available to State's Attorney Glasgow for that act.

**D.   Plaintiff's allegations do not plausibly suggest that State's Attorney Glasgow's meeting with certain constituents was outside of his normal and official functions so as to deprive him of sovereign immunity.**

Plaintiff argues that State's Attorney Glasgow is not entitled to sovereign immunity because the Complaint "directly alleges" that the March 2008 meeting was outside of State's Attorney Glasgow's normal and official functions. (Resp., p. 10). Plaintiff does not cite to any specific paragraph of the Complaint in support of this assertion and a review of the Complaint fails to reveal any such "direct" allegation. The Complaint does contain an allegation that State's Attorney Glasgow "went beyond his prosecutorial duties and performed in an investigative capacity." (Compl., ¶28).

---

[1] The absence of such an allegation is significant because by virtue of the underlying criminal case, Plaintiff possesses a copy of all of the prosecution's investigatory materials.

That allegation, however, is insufficient to plausibly suggest that State's Attorney Glasgow acted outside of his normal and official functions. One need look no further than reported decisions addressing the distinction between "prosecutorial" and "investigative" functions to see that prosecutors regularly perform both prosecutorial and investigative functions. *See e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74, 113 S.Ct. 2606, 2616 n.5 (1993); *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997); *White*, 369 Ill.App.3d at 770, 861 N.E.2d at 1088-1089. More importantly, though, Illinois precedent teaches that state's attorneys are authorized to investigate facts for purposes of determining whether a criminal offense has occurred. *See* 55 ILCS 5/3-9005; *People v. Nohren*, 283 Ill.App.3d 753, 758-59, 670 N.E.2d 1208, 1211-12 (4th Dist. 1996) (court explaining that state's attorneys have wide discretion in exercising investigative powers with respect to suspected criminal activity). Thus, in the present case, because the alleged act of visiting the "crime" scene and meeting with constituents was related to the possibility that a crime had occurred, the act was within State's Attorney's Glasgow's normal and official functions for purposes of applying sovereign immunity.

WHEREFORE, for the reasons set forth above and in the foregoing motion to dismiss and memorandum of law in support, Defendant respectfully requests that this Court enter an order dismissing the Complaint in its entirety with prejudice, and granting Defendant such further or additional relief as this Court deems just and appropriate.

    Respectfully submitted,

    WILL COUNTY STATE'S ATTORNEY
    JAMES W. GLASGOW


    s/ Martin W. McManaman
    One of the attorneys for Defendant

Martin W. McManaman
Patrick R. Moran
Justin C. Doolittle
LOWIS & GELLEN LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
(312) 364-2500