IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCQUIN VAN GUILDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 1875 |
| | ) |
| WILL COUNTY STATE'S ATTORNEY | ) Judge Castillo |
| JAMES W. GLASGOW, individually, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Rocquin Van Guilder ("Plaintiff"), a citizen of Indiana, brings this diversity action against Will County State's Attorney James W. Glasgow ("Defendant"), alleging a state law claim for malicious prosecution. (R. 1, Compl.) Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that he is entitled to immunity for the acts alleged in the complaint. (R. 14, Mot. to Dismiss.) For the reasons stated below, the motion is granted.

### RELEVANT FACTS

On December 1, 2006, Plaintiff was working as a project manager for the Peotone Airport project in Will County, Illinois. (R. 1, Compl. ¶ 8.) In the course of this work, it became necessary for the contractor, Alpine Demolition ("Alpine"), to cross private property in order to remove certain equipment located at an Illinois Department of Transportation ("IDOT") property. (Id. ¶¶ 9-12). Plaintiff and his son, Lee Van Guilder, attempted to contact the owner of the

1

private property, Mr. Baugh[1] ("Baugh"), to obtain permission to cross his property, but were unable to do so. (*Id.* ¶ 13.) Plaintiff then spoke with a Will County official, Mr. Batterman[2] ("Batterman"), to request permission to use Will Township roadways to remove the equipment from the IDOT property. (*Id.* ¶ 14.) Batterman refused to give Plaintiff permission to use the roadways, citing opposition to the airport by Will County officials. (*Id.*)

Thereafter, Bob Gatto ("Gatto"), a machine operator employed by Alpine, "mistakenly" crossed Baugh's property while driving the equipment. (*Id.* ¶ 15.) Baugh responded to Gatto's entry upon his property "by retrieving a shotgun and directing it toward Mr. Gatto." (*Id.* ¶ 17.) After learning about this incident, Plaintiff's son went to Baugh's property to offer an apology, "and immediately left the property when told." (*Id.* ¶ 18.) Plaintiff alleges that he was not within the "immediate vicinity" when Gatto entered Baugh's property. (*Id.* ¶ 19.) He also alleges that there was no damage caused to Baugh's property as a result of Gatto's entry. (*Id.* ¶ 24.)

Complaints were subsequently made to Defendant about this incident.[3] (*Id.* ¶ 25.)

---

[1] The complaint does not reveal Baugh's first name. (*See* R. 1, Compl. ¶ 12.) The Court notes that the complaint is not a model of clarity and is sketchy on numerous details, including the type of "equipment" involved and the reason why it was necessary to cross private property to remove the equipment. The complaint also refers to the contractor as both "Alpine Demolition" and "Alpine Construction." (*See id.* ¶¶ 11-15.) It is not clear if these are separate entities, nor is it clear which one Plaintiff worked for. The Court has attempted to discern and construe the allegations in the complaint in the light most favorable to Plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] The complaint does not reveal Batterman's first name. (*See* R. 1, Compl. ¶ 14.) Defendant asserts that Plaintiff mistakenly identified Batterman as a Will County official, when in fact he works for Will Township. (*See* R. 16, Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 2 n. 1.)

[3] The complaint does not explain the circumstances under which Defendant initially became involved in this matter, except to state, "The question of criminal charges against the Van Guilders was brought before Defendant Glasgow." (*See* R. 1, Compl. ¶ 25.)

Initially, Defendant stated publicly that there was insufficient evidence to support a trespassing charge. (*Id.*) In March 2007, after receiving negative press about his decision not to initiate criminal charges, Defendant visited the "scene of the crime" (Baugh's property), and met with representatives of the Will County Board, Will Township, and an organization called "Shut This Airport Nightmare Down." (*Id.* ¶ 26.) Following this meeting, Defendant "experienced a change of heart" and brought charges against Plaintiff for criminal trespass and criminal damage to property. (*Id.* ¶ 27.) On February 8, 2008, Plaintiff was acquitted of these charges. (*Id.* ¶ 31).

## PROCEDURAL HISTORY

On April 1, 2008, Plaintiff brought this action against Defendant alleging a claim for malicious prosecution under Illinois law. (R. 1, Compl.) Plaintiff alleges that Defendant initiated criminal charges against him "knowing he had no probable cause and that [the charges] were false." (*Id.* ¶ 30.) Plaintiff also alleges that Defendant went beyond the scope of his prosecutorial duties in visiting Baugh's property and meeting with community members. (*Id.* ¶¶ 26-28.) He further alleges that due to Defendant's actions, he suffered "severe financial hardship," including the termination of his employment. (*Id.* ¶ 32.)

Defendant moves to dismiss, arguing that he has immunity for the acts alleged in the complaint. (R. 14, Mot. to Dismiss at 1-2.) Specifically, Defendant argues that he has prosecutorial immunity for his decision to initiate criminal charges, and has both public official and sovereign immunity for his actions in visiting the scene and meeting with citizens. (*Id.*)

## LEGAL STANDARD

In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the

3

light most favorable to the plaintiff. *Killingsworth*, 507 F.3d at 618. Similarly, in deciding a Rule 12(b)(1) motion to dismiss, the Court assumes for purposes of the motion that the allegations in the complaint are true. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

## ANALYSIS

### I. Prosecutorial Immunity

Defendant first argues that he has prosecutorial immunity with respect to his decision to bring criminal charges against Plaintiff. (R. 16, Def.'s Mem. at 4-5.) Under Illinois law, the initiation and prosecution of criminal charges is an important prosecutorial function for which the prosecutor enjoys absolute immunity. *White v. City of Chicago*, 861 N.E.2d 1083, 1088 (Ill. App. Ct. 2006). Absolute immunity only applies to a prosecutor's activities that are "intimately associated with the judicial phase of the criminal process." *Id.* The Supreme Court has adopted a "functional" approach to determine the level of immunity to which a prosecutor is entitled for his actions. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Illinois courts apply this same functional analysis to state law claims against prosecutors. *See, e.g., White*, 861 N.E.2d at 1089-90; *Aboufariss v. City of Dekalb*, 713 N.E.2d 804, 812 (Ill. App. Ct. 1999). This approach requires the Court to examine the prosecutor's conduct and determine the nature of that conduct. *Imbler*, 424 U.S. at 430. If the nature of the prosecutor's conduct is prosecutorial, the prosecutor has absolute immunity; if the conduct is administrative or investigatory, the prosecutor has qualified rather than absolute immunity. *Id.*

Here, Plaintiff alleges that Defendant improperly initiated criminal charges against him knowing that "he had no probable cause" and that the charges were "false." (R. 1, Compl. ¶ 29.)

4

Because the initiation and prosecution of criminal charges are core prosecutorial functions, Defendant is entitled to absolute immunity for these acts. *See White*, 861 N.E.2d at 523; *Aboufariss*, 713 N.E.2d at 812; *People v. Patrick J. Gorman Consultants, Inc.*, 444 N.E.2d 776, 779 (Ill. App. Ct. 1982). Indeed, Plaintiff concedes that "in filing the complaint against him and initiating criminal charges, Defendant was acting in his core prosecutorial role and would thus be entitled to absolute immunity."[4] (R. 20, Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 4.) Accordingly, to the extent Plaintiff is basing his malicious prosecution claim on Defendant's decision to initiate criminal charges against him, that portion of the claim is barred by absolute immunity and is dismissed with prejudice.

## II. Sovereign & Public Official Immunity

Defendant next argues that he is entitled to sovereign and public official immunity for the other acts alleged in the complaint, namely, his visit to the scene of the alleged trespass and his meeting with community members. (R. 16, Def.'s Mem. at 6-9.) The Court addresses first the argument pertaining to sovereign immunity, since this goes to the Court's subject matter jurisdiction. *See Turner v. Miller*, 301 F.3d 599, 602-03 (7th Cir. 2002) (district court lacked subject matter jurisdiction over state law claim barred by state law sovereign immunity principles).

State sovereign immunity rules apply to state law causes of action brought in federal court

---

[4] Plaintiff argues at length that Defendant's actions in visiting the alleged crime scene and meeting with community members were conducted in an investigatory capacity and are therefore not entitled to absolute immunity. (R. 20, Pl.'s Resp. at 3-7.) However, Defendant is not arguing that he is entitled to absolute immunity for these acts, and instead argues that he is entitled to public official and sovereign immunity for these specific actions. (*See* R. 16, Def.'s Mem. at 6-9 & n.2.)

5

against state officials. *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003). Under Illinois law, state's attorneys are considered state officials, rather than county or local officials. *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995); *Ingemunson v. Hedges*, 1549 N.E.2d 1269, 1273 (Ill. 1990). The Illinois State Lawsuit Immunity Act provides that the state cannot be sued unless one of a limited number of exceptions applies. 745 ILCS § 5/1. One such exception is found in the Illinois Court of Claims Act, which requires all claims against the state "sounding in tort" to be heard in that court. 705 ILCS § 505/8(d); *see also Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. App. Ct. 2004). Thus, if Plaintiff's state law claim is being brought against the state itself rather than against Defendant individually, the claim must be litigated in the Illinois Court of Claims. *See Jinkins*, 807 N.E.2d at 417.

The determination of whether a state law claim is being brought against the state depends on the "issues raised" and the "relief sought," rather than on the formal designation of the parties. *Fritz v. Johnston*, 807 N.E.2d 461, 466 (Ill. App. Ct. 2004). Thus, the fact that Plaintiff is suing Defendant in his individual capacity is not determinative. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). An action is considered to be against the state if the following factors exist: there are no allegations that the defendant acted beyond the scope of his official authority through wrongful acts; the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment; and the complained-of actions involve matters ordinarily within the defendant's official functions. *Richman*, 270 F.3d at 441; *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990).

Based on the allegations in the complaint, it is apparent that the conduct Plaintiff complains of by Defendant---visiting the scene of an alleged crime and meeting with the property

6

owner and other community members---occurred within the scope of his official duties as a prosecutor. *See White*, 861 N.E.2d at 1095-96 (state's attorneys acting within the scope of their employment in tort action involving alleged misconduct occurring during investigation of criminal case and thus case had to be brought in Illinois Court of Claims); *Sneed v. Howell*, 716 N.E.2d 336, 341 (Ill. App. Ct. 1999) (state's attorney acting within scope of his employment in tort case challenging his decision not to bring criminal charges and to remove case to another county based on his friendship with suspect); *see also Redd v. Dougherty*, ---F. Supp. 2d---, 2008 WL 4346791, at *9 (N.D. Ill. 2008) (state's attorney acting within the scope of his employment for purposes of state sovereign immunity principles when he interviewed witness and filed complaint).

Plaintiff argues that Defendant is not entitled to sovereign immunity because he acted "maliciously."[5] (R. 20, Pl.'s Resp. at 10.) Plaintiff is correct that sovereign immunity affords no protection when it is alleged that the defendant acted with malice. *Welch v. Ill. Supreme Court*, 751 N.E.2d 1187, 1197 (Ill. App. Ct. 2001). "Malice" in this context means "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstance that the law will imply an evil intent." *Mgmt. Ass'n of Ill., Inc. v. Bd. of Regents of N. Ill. Univ.*, 618 N.E.2d 694, 705 (Ill. App. Ct. 1993). Although Plaintiff alleges that Defendant

---

[5] Plaintiff also argues that Defendant's site visit and meeting constituted an "investigatory function," thus "stripping Defendant of any protection arising from sovereign immunity." (R. 20, Pl.'s Resp. at 10.) Plaintiff appears to be confusing prosecutorial immunity with state sovereign immunity, because in support of this argument he cites *Buckley v. Fitzimmons*, 509 U.S. 259, 274 (1993), one of the seminal cases on prosecutorial immunity. (*See id.*) Prosecutorial immunity and state sovereign immunity are distinct doctrines, and as discussed herein the prosecutorial/investigatory dichotomy has no bearing on the state sovereign immunity analysis.

7

acted maliciously in initiating criminal charges (an act for which Plaintiff concedes Defendant has absolute prosecutorial immunity), he raises no such allegations with respect to Defendant's actions in visiting the alleged crime scene and meeting with community members. (*See* R. 1, Compl. ¶¶ 26-27.) Nor can the Court discern a basis for concluding that, under the circumstances alleged, Defendant's decision to visit the scene of a potential crime and meet with citizens concerned that a crime had occurred constituted malicious conduct. Under Illinois law, the state's attorney is vested with exclusive discretion to determine whether to initiate criminal charges, and to decide which charges to bring. *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997); *People ex rel. Daley v. Moran*, 445 N.E.2d 270, 272 (Ill. 1983); *People v. Pankey*, 445 N.E.2d 284, 287 (Ill. 1983). A state's attorney also has a duty to "investigate facts and determine whether an offense has been committed." *People v. Nohren*, 670 N.E.2d 1208, 1211 (Ill. App. Ct. 1996); *see also McCall v. Devine*, 777 N.E.2d 405, 415 (Ill. App. Ct. 2002) ("[I]t has been held that the duties of the State's Attorney *require* an investigation into the facts of an incident.") (emphasis in original). In light of these duties, and the "wide discretion" afforded the state's attorney in carrying them out, *see Nohren*, 670 N.E.2d at 1211, the Court finds no basis for concluding that Defendant's conduct as alleged in the complaint was malicious or beyond the scope of his prosecutorial duties.

For these reasons, the Court concludes that Plaintiff is effectively suing the state, and therefore his claim must be brought in the Illinois Court of Claims. Because this Court lacks jurisdiction over the claim, we do not reach Defendant's alternative argument that he is entitled to public official immunity for these specific acts. (R. 16, Def.'s Mem. at 6-8.)

8

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (R. 14) is granted. Plaintiff's challenge to Defendant's decision to initiate and prosecute criminal charges against him is barred by prosecutorial immunity and is dismissed with prejudice. Plaintiff's challenge to Defendant's other actions, as delineated herein, is dismissed without prejudice to refiling in the Illinois Court of Claims.

ENTERED:

Ruben Castillo
United States District Judge

Dated: December 3, 2008